1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2     Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
3  okatz@sheppardmullin.com
Four Embarcadero Center, Seventeenth Floor
4  San Francisco, California 94111
Telephone:  415-434-9100
5  Facsimile:  415-434-3947
AARON J. MALO, Cal. Bar No. 179985
6  amalo@sheppardmullin.com
650 Town Center Drive, 4th Floor
7  Costa Mesa, California 92626-1993
Telephone:  714-513-5100
8  Facsimile:  714-513-5130
CARREN B. SHULMAN (*admitted in New York*)
9  cshulman@sheppardmullin.com
30 Rockefeller Plaza
10  New York, New York 10112
Telephone:  212-653-8700
11  Facsimile:  212-653-8701

12  Proposed Attorneys for Debtor

13          UNITED STATES BANKRUPTCY COURT

14          CENTRAL DISTRICT OF CALIFORNIA

15            SANTA ANA DIVISION

16  In re:                                                    Case No. 8:10-bk-27571

17  MMFX STEEL CORPORATION OF                                 Chapter 11
    AMERICA,
18                                                            **SUPPLEMENTAL DECLARATION
                                                              OF MICHAEL POMPAY IN
19                  Debtor.    SUPPORT OF DEBTOR'S
                                                              EMERGENCY MOTION FOR
20                                                            INTERIM AND FINAL ORDER
                                                              (I) AUTHORIZING POST-
21                                                            PETITION FINANCING AND
                                                              GRANTING LIENS AND SUPER-
22                                                            PRIORITY CLAIMS, AND (II)
                                                              PROVIDING RELATED RELIEF**
23
                                                              Date:  December 16, 2010
24                                                            Time:  3:00 p.m.
                                                              Place: United States Bankruptcy Court
25                                                                   411 West Fourth Street
                                                                     Santa Ana, CA 92701
26                                                                   Courtroom 5D
                                                              Judge: Hon. Robert Kwan
27

28

-1-

1      I, Michael W. Pompay, declare as follows:

2      1.      I am also the President of MMFX Steel Corporation of America, a Nevada

3    corporation ("Steel Corp."). I am the President of MMFX Technologies Corporation, a

4    California corporation ("Technologies"), and the Corporate Secretary of Fasteel

5    Corporation, a California corporation "Fasteel") (the Debtor, Technologies, and Fasteel are

6    referred to collectively in this declaration as the "Debtors"). I am familiar with the

7    Debtors' day-to-day operations, business affairs and books and records. Except as

8    otherwise indicated, all statements in this Supplemental Declaration are based on my

9    personal knowledge, my review of relevant documents or my opinion based upon my

10   experience and knowledge of the Debtors' operations and financial condition. If I were

11   called upon to testify, I could and would testify to each of the facts set forth herein based

12   on such personal knowledge, review of documents or opinion. I am authorized to submit

13   this Supplemental Declaration on behalf of the Debtors.

14     2.      I submit this Supplemental Declaration in support of the Debtors' Emergency

15   Motion for an Order Authorizing Post-Petition Financing (the "DIP Financing Motion")

16   and the Debtor's Emergency Motion for Order Authorizing Debtor to Honor Prepetition

17   Obligations to Employees (the "Employee Wage Motion").

18     3.      The Debtors have no free cash available to them. I am hopeful that through

19   discussions between the Debtors' conflicts counsel and Wells Fargo Business Credit, a

20   Division of Wells Fargo Bank, N.A. ("Wells Fargo"), the Debtors will be able to quickly

21   reach a stipulation regarding the use of cash collateral during the course of this case.

22   However, it is uncertain whether such a stipulation will be reached. Regardless of whether

23   a stipulation is reached, I believe that the use of cash collateral alone during the course of

24   this case will be insufficient to fund the Debtors' operations, as shown on the Budget

25   attached to the proposed DIP Credit Agreement. As a result, it is critically important that

26   the Debtors obtain the immediate use of the DIP Financing in order to allow critical items,

27   such as payroll funding and expenditures on product, to be made without disruption.

28

1 Failure to pay those items will severely disrupt the Debtors' business and cause irreparable

2 harm.

3     4.    The proposed DIP Financing provides for the Debtors to borrow up to

4 $5 million, including initial advances of $1.5 million pursuant to an agreed upon budget in

5 the form attached to the DIP Credit Agreement as Exhibit A (the "Budget").

6     5.    The proposed lender, Lindsey Davidson ("DIP Lender"), is currently a party

7 to two pre-petition loan agreements: (i) that certain 12% secured note, dated August 1,

8 2010 in the original principal amount of $400,000, and (ii) that certain 12% secured note

9 dated October and November 2009 in the original principal of amount of $500,000, DIP

10 Lender's portion of which is $50,000, which loans are secured by certain of the Debtors'

11 inventory and equipment, and pursuant to which DIP Lender is entitled to monthly

12 payments of $4,500.00 for interest (the "Existing Loan").

13     6.    DIP Lender is a shareholder of Technologies, holding 2.97% of the common

14 shares of Technologies.  DIP Lender is not, and never has been, an officer, director or

15 person in control of any of the Debtors.

16     7.    Importantly, although the Budget shows beginning cash of $344,224 and

17 accounts receivable of $88,347 during the first week of the case, these amounts are subject

18 to the security interest of Wells Fargo and may not be available during the course of this

19 case.  Accordingly, it is absolutely critical that the DIP Financing sought be approved.

20     8.    The Debtors' success in these bankruptcy cases depends in part on the

21 Debtors' ability to successfully recapitalize and reorganize during the course of this case,

22 which in turn depends on its ability to demonstrate to existing and potential customers,

23 suppliers, vendors, employees and other contract counter-parties that the Debtors have

24 adequate means to operate during these chapter 11 bankruptcy cases.  It is imperative that

25 the Debtors can promptly instill confidence in the third-parties deeply entwined and relied

26 upon for the Debtors' operations. The Budget is built on assumptions for continued sales

27 and operations.  The Debtors purchase product for resale from third-party mills and rely on

28 our existing financial arrangements and supply chain to generate operating cash flow.

-3-

W02-WEST:3MAW1\403148264.1

1  Unless the interim financing becomes available as set forth in the Budget, the Debtors will

2  suffer irreparable harm as it will be at risk of not meeting their critical obligations to third

3  parties. Such a failure would in turn force the Debtors to cease operations and liquidate

4  immediately.

5          9.      The DIP Financing is also necessary to avoid the perception by third parties

6  that they hold undue leverage over the Debtors in normal business negotiations due to the

7  Debtors' liquidity crisis.

8          10.     The ability of the Debtors to obtain sufficient working capital and liquidity

9  through the incurrence of new indebtedness is vital to the Debtors. The preservation and

10  maintenance of the going concern value of the Debtors is integral to a successful

11  reorganization or other transaction.

12          11.     The Debtors were unable to obtain unsecured credit from other sources,

13  despite extensive negotiations with third parties over an extended period of time. As a

14  result, efforts were focused on obtaining the DIP Financing currently sought. The DIP

15  Financing offered by the DIP Lender is the Debtors' only realistic alternative to obtain

16  post-petition credit.

17          12.     The Debtors negotiated the DIP Credit Agreement at arm's length and

18  pursuant to its business judgment.

19          13.     Steel Corp. currently has 12 employees who are paid on an hourly basis.

20  Payroll for Steel Corp.'s salaried employees was funded in the ordinary course of business

21  prior to the Petition Date. No salaried employees are owed pre-petition wages, although

22  some salaried employees are owed expense reimbursements and it is important that those

23  amounts be paid.

24          14.     In the ordinary course of business, payroll for these 12 employees would be

25  funded on Wednesday, December 15, 2010 on account of prior periods worked.

26          15.     I believe that any failure to honor these employee-related obligations in the

27  ordinary course of business would create hardship and discontent among Steel Corp.'s

28  employees, which would in turn decrease productivity and undermine the Debtors' ability

-4-

W02-WEST:3MAW1\403148264.1

1   to retain employees, continue normal operations and ultimately, to effectuate a going

2   concern sale or reorganize.

3        16.    The 12 employees at issue are trained equipment operators who work within

4   Steel Corp.'s fabrication facilities. They have specialized skills and would be difficult to

5   replace. I estimate that even if they could be replaced, it could take anywhere from two

6   weeks to a full month to find the requisite employees. Such a long period of downtime at

7   Steel Corp.'s fabrication facilities could effectively shut down Steel Corp. and even a

8   temporary shut down would be devastating.

9        17.    If Steel Corp. cannot assure its employees that it will promptly pay

10   employment-related payments and benefits, employee morale and the Debtors' operations

11   will suffer. The pay and continued benefits are important to the Debtors' employees and

12   their livelihoods. Many (if not most) of the Debtors' employees live check to check.

13   Moreover, the amount requested is relatively small, estimated to be approximately $5,000

14   for benefits and employee reimbursements, plus approximately $8,750 for the prepetition

15   portion of Steel Corp.'s payroll. Steel Corp. also seek to honor post-petition (but not pay

16   out), their prepetition vacation obligations to employees.

17        18.    I believe that any delay in honoring Steel Corp.'s prepetition employee

18   obligations will destroy Steel Corp.'s relationship with its employees, irreparably impair

19   employee morale, and may cause an exodus of employees. I further believe that the

20   livelihood of many of Steel Corp.'s employees depends on the income provided through

21   their work for Steel Corp. Many of them rely on their wages as their only source of

22   income. To them, the loss of this income for even a few days may result in a financial

23   ///

24   ///

25   ///

26

27

28

W02-WEST:3MAW1\403148264.1

hardship.  Employee support for the Debtors' continued operations is critical.  Without such support, the Debtors face the imminent risk that its operations will be severely impaired.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.  Executed this 14th day of December 2010 at Irvine, California.

Michael W. Pompay

W02-WEST:3MAW1\403148264.1