John D. Fredericks (SBN: 168309)
Marcus O. Colabianchi (SBN: 208698)
WINSTON & STRAWN LLP
101 California Street, 39th Floor
San Francisco, CA  94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400
jfredericks@winston.com
mcolabianchi@winston.com

Justin E. Rawlins (SBN: 209915)
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543
Telephone:    (213) 615-1700
Facsimile:    (213) 615-1750
jrawlins@winston.com

Attorneys for Creditor
FOURTH THIRD LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>MMFX STEEL CORPORATION OF AMERICA,<br><br>        Debtor. | **Case No.  8:10-bk-27571-RK**<br><br>Chapter 11<br><br>**FOURTH THIRD LLC'S OBJECTION TO THE DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING POST-PETITION FINANCING AND GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (II) PROVIDING RELATED RELIEF**<br><br>Date: December 16, 2010<br>Time: 3:00 p.m.<br>Place: United States Bankruptcy Court<br>       411 West Fourth Street<br>       Santa Ana, CA  92701<br>       Courtroom 5D<br>Judge: Hon. Robert Kwan |

1

# **TABLE OF CONTENTS**

I. Introductory statement ........................................................................................................2

II. BACKGROUND FACTS ...................................................................................................3

    A. Loan Obligations, Default and the Guaranty Action ..............................................3

    B. Corporate Structure .................................................................................................5

    C. The Insolvency Proceedings and Related U.S. Insolvency Proceedings ................5

    D. Debtors' Prior Marketing and Restructuring Efforts ...............................................6

    E. Recent Events And Proposed Alternative To The Current DIP Financing ............7

III. Specific Objections to the DIP Motion and DIP FINANCING ..........................................7

    A. The Debtors Have Not Made Full Disclosures Regarding the DIP Lender's Disinterestedness And The DIP Lender May Ultimately Be Found To Be An Insider .......................................................................................................................7

    B. The Debtors Appear To Need Significantly Less Funds Than Are Requested .....8

    C. Roll-up Of Portions Of The Existing Debt Should Be Stricken .............................9

    D. The Description Of The Collateral Is Inconsistent .................................................9

    E. Indemnification Provision In DIP Credit Agreement Is Unclear..........................10

    F. Lack Of Evidence In Support Of The DIP Motion...............................................10

    G. Automatic Relief from Stay Is Objectionable And Denies Parties Due Process ..11

IV. FOURTH THIRD'S ALTERNATIVE DIP Loan .............................................................11

    1. Fourth Third's proposed DIP loan will guarantee financing of $1.6 million, $100,000 more than what is guaranteed under the current proposal. ..............................................................................................................12

    2. Fourth Third's proposed DIP loan accrues interest at 10% and thus, has a 2% lower interest rate. ....................................................................................12

    3. Fourth Third's proposed DIP loan does not require any payments be made during the proposed term. ..............................................................................12

    4. Fourth Third will not require the Debtors to provide office space. ................12

    5. Fourth Third will not require immediate relief from the automatic stay upon a termination event. ................................................................................12

    6. Fourth Third does not propose to roll up any prepetition debt. .....................12

V. RESERVATION OF RIGHTS ..........................................................................................12

VI. CONCLUSION ..................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

In re Adamson Co., Inc.,
   29 B.R. 937 (Bankr. E.D. Va. 1983)..................................................................................10

In re EDC Holding Co.,
   676 F.2d 945 (7th Cir. 1982) ............................................................................................7

New York Life Ins. Co. v. Revco D.S. Inc. (In re Revco D.S., Inc.),
   901 F. 2d 1359 (6th Cir. 1990) ........................................................................................7

Pepper v. Litton,
   308 U.S. 295 (1939)..........................................................................................................7

**STATUTES**

Bankruptcy Code § 364(c) ........................................................................................................10

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

**TO THE HONORABLE JUDGE OF THE UNITED STATES BANKRUPTCY COURT:**

Fourth Third LLC ("Fourth Third"),[1] the largest unsecured creditor of debtors MMFX Steel Corporation of America ("MMFX Steel"), Fasteel Corporation ("Fasteel"), MMFX Technologies Corporation ("MMFX Technologies") (collectively, the "Debtors") hereby submits this objection (the "Objection")[2] to the Debtors' Emergency Motion for Interim and Final Order (i) Authorizing Post-Petition Financing and Granting Liens and Super-Priority Claims, and (ii) Providing Related Relief (the "DIP Motion"). In connection herewith, Fourth Third respectfully submits the following:

## I. INTRODUCTORY STATEMENT

The Debtors' bankruptcy filings are essentially the final chapter in a lengthy effort to restructure and reorganize their balance sheet and operations. The Debtors, and the larger MMFX Steel enterprise, have been engaged in restructuring efforts for eighteen months now, ever since they idled the mill in Welland, Ontario and stopped making current payments on their obligations to Fourth Third. Their affiliates filed bankruptcy cases over a year ago in Canada and before this Court. The Debtors themselves have gone through a lengthy, almost year long, out of court marketing process. But none of these past efforts have led to success. In fact, at this point, every entity that compromises the MMFX Steel enterprise is now a debtor in a bankruptcy proceeding. The fact of the matter is that the Debtors are now seeking bankruptcy relief to obtain even more time to restructure – something they have been attempting to do for a very long time. There is no indication that the climate for a restructuring has changed.

Each of the Debtors, joint and severally, owe Fourth Third more than $49 million pursuant to commercial guaranties each of them signed in connection with a $55 million loan to three other affiliate entities. Those affiliate entities stopped making current payments on the underlying loan in July 2009 and the loan has been in default ever since. As discussed in the Debtors' motion papers, Fourth Third has already exhausted its security collateralizing the $55 million loan and now holds the largest unsecured claim against each of the Debtors.

---

[1] Capitalized terms not defined herein shall have the meanings attributed to them in the DIP Motion.
[2] The Debtors' cases have not been jointly administered and as such, Fourth Third has filed nearly identical Objections in each of the Debtors' bankruptcy cases to the DIP Motion.

2

Fourth Third, however, as a creditor of the Debtors, is also interested in the Debtors maximizing the value of their remaining assets. Fourth Third thus has a number of objections to the proposed DIP Financing, which are as follows:

- The Debtors have not made full disclosures regarding the proposed DIP Lender's involvement in the business and connections with other parties involved in the business. The proposed DIP lender does not appear to be disinterested and may ultimately be found to be an insider.

- The Debtors appear to need significantly less funds than requested.

- The roll-up of prepetition debts contained in paragraph 11 of the DIP Credit Agreement is impermissible.

- The description of the collateral is inconsistent.

- The proposed indemnification provision in DIP Credit Agreement is unclear.

- There is a dearth of evidence supporting the DIP Motion.

- The DIP Lender's requiring automatic relief from stay upon a default is objectionable and denies parties-in-interest due process.

And with those objections to the DIP Financing, Fourth Third is willing to enter into a DIP loan (see Exhibits A and B) with more satisfactory and favorable terms, which loan should set the stage for a better process to maximize value and efficiently reorganize.

## II.     BACKGROUND FACTS

### A.     Loan Obligations, Default and the Guaranty Action

On May 30, 2008, Fourth Third, as lender, Welland Security Holding Corporation, as collateral agent ("Collateral Agent"), and ST Welland Real Estate, Inc., ST Equipment Inc. and MMFX Steel Corporation of Canada Inc. (collectively, the "Borrowers") and MMFX Technologies, MMFX Steel, Fasteel, MMFX International Holdings, Inc., and MMFX Canadian Holdings, Inc. (collectively, MMFX Technologies, MMFX Steel, Fasteel, MMFX International Holdings, Inc., and MMFX Canadian Holdings, Inc. are sometimes referred to herein as the "Guarantors") entered into a written Credit Agreement (the "Credit Agreement") pursuant to which Fourth Third agreed to lend the Borrowers $55,000,000 that was secured by certain assets of the Borrowers located in Welland, Ontario, Canada – referred to as the Welland Mill. Borrowers also executed a written Term Note

dated as of June 2, 2008 for $55,000,000 in favor of Fourth Third (the "Term Note").[3] Each of the Guarantors guaranteed payments and performance of the Obligations pursuant to Paragraph 10.01 of the Credit Agreement.

Beginning on July 1, 2009 the Borrowers failed to pay interest payments as they came due, and after written notice and numerous extensions, all of the Obligations were accelerated and became due and payable.

On January 5, 2010, certain of the Debtors' subsidiaries commenced insolvency proceedings in Canada and before this Court, as more fully discussed in Section C below. On October 12, 2010, Fourth Third filed a collection action against the Debtors in the San Diego County Superior Court entitled "Fourth Third v. MMFX Technologies Corporation", Case No. 37-2010-00102068-CU-CO-CTL (the "Guaranty Action") on October 12, 2010. In connection with the Guaranty Action, the Honorable Richard E.L. Strauss of the San Diego County Superior Court entered right to attach orders and issued writ of attachments against all of the Debtors' property available for attachment under California law.

[Remainder of this page is left blank]

---

[3] All of the obligations of the Borrowers under the Credit Agreement, the Term Note, and all of the other documents entered into in connection with the transactions contemplated by the Credit Agreement (collectively, the "Loan Documents") are hereafter sometimes referred to as the "Obligations".

4

**B.    Corporate Structure**

The Borrowers and Guarantors are all related entities and taken as a whole, part of a single consolidated steel manufacturing enterprise. Debtor MMFX Technologies is the lead parent entity. The corporate structure of the enterprise is as follows:



**C.    The Insolvency Proceedings and Related U.S. Insolvency Proceedings**

On January 5, 2010, the Borrowers' filed for bankruptcy protection under the Companies' Creditors Arrangement Act in Ontario, Canada (the "<u>Canadian Insolvency Proceedings</u>") and MMFX International Holdings, Inc. and MMFX Canadian Holdings, Inc. filed for Chapter 11 Bankruptcy protection in the Central District of California, Santa Ana Division (the "<u>Related U.S. Insolvency Proceedings</u>"). The Related U.S. Insolvency Proceedings are pending before this Court and are part of the Debtors' joint administration motion currently scheduled for hearing on December 16, 2010.

In connection with the Canadian Insolvency Proceedings, the Borrowers marketed the Collateral and an auction was held on July 20, 2010. Fourth Third was the successful bidder. Shortly thereafter, the Borrowers, as sellers, entered into an Asset Purchase Agreement (the "APA") with Fourth Third, as buyer, setting forth the terms and conditions for the sale of the Collateral. The APA was approved by the court in the Canadian Insolvency Proceedings pursuant to an order dated July 30, 2010. The sale of the Collateral closed on August 30, 2010, whereupon title to the Collateral vested in 2251902 Ontario Inc. as Fourth Third's assignee under the APA.

A portion of the purchase price under the APA consisted of a credit against the Obligations in the amount of Canadian $28,772,634.27. As of the closing date of August 30, 2010, the conversion rate was Canadian $0.9434 to U.S. $1.00. Accordingly, U.S. $27,144,103.17 (the "Credit Bid Amount") of the Obligations were satisfied as a result of the closing of the sale of the Collateral pursuant to the APA.

As of August 31, 2010, after application of the Credit Bid Amount, the total amount necessary to satisfy the Borrowers' Obligations under the Credit Agreement, the Term Note and all of the other Loan Documents, exclusive of unreimbursed attorney and other professional fees and costs, was $49,085,685.17, plus interest, fees, and other charges that have accrued and continue to accrue.

**D.    Debtors' Prior Marketing and Restructuring Efforts**

In connection with the Canadian Insolvency Proceedings, the Canadian Debtors and the New Additional Debtors jointly retained Chanin Capital Partners and Duff & Phelps Securities, LLC ("Chanin/D&P") to act as financial advisors and investment bankers. Pursuant to this engagement, Chanin/D&P ran a dual-tracked process seeking pursuing both a potential sale of the mill and a possible capital raise for the Canadian debtors. Chanin/D&P contacted fifty-six potential strategic buyers and eighty-one potential financial buyers/investors/lenders. Thirty-three of the persons contacted signed non-disclosure agreements and conducted some degree of due diligence. The process concluded in July of 2010 and failed to produce a single term sheet for an investment or other strategic transaction with the Canadian debtors.

### E. Recent Events And Proposed Alternative To The Current DIP Financing

Fourth Third, along with another creditor of MMFX Technologies, Investment Funding, Inc., engaged in negotiations with the Debtors in an attempt to reach an out-of-court workout. Debtors were facing a December 14, 2010 deadline to file for bankruptcy as described in the DIP Motion pursuant to the Lien Release Agreement. Although offers were made, the negotiations did not yield an out-of-court workout that was acceptable to the Debtors or their related entities. Throughout those negotiations, Fourth Third represented that it would fund a DIP loan in the event the Debtors had filed for bankruptcy. As will be mentioned briefly below, Fourth Third is willing to serve as a DIP lender on terms that Fourth Third believes is more favorable than the current DIP Financing.

## III. SPECIFIC OBJECTIONS TO THE DIP MOTION AND DIP FINANCING

Fourth Third has the following objections to the DIP Motion and the proposed DIP Financing:

### A. The Debtors Have Not Made Full Disclosures Regarding the DIP Lender's Disinterestedness And The DIP Lender May Ultimately Be Found To Be An Insider

Ms. Davidson's role with the Debtors and relationship to former management and the other major shareholders has not been adequately disclosed. It is fundamental that financing should not be authorized unless it is extended in good faith. See In re EDC Holding Co., 676 F.2d 945 (7th Cir. 1982); New York Life Ins. Co. v. Revco D.S. Inc. (In re Revco D.S., Inc.), 901 F. 2d 1359 (6th Cir. 1990) (express finding of good faith is required). The party seeking to establish good faith bears the burden of proof. In re Revco D.S., Inc., 901 F.2d 1359, 1366 (6th Cir. 1990) (good faith under section 364(e) should not be presumed). See Pepper v. Litton, 308 U.S. 295, 306 (1939) (A dominant or controlling shareholder is a fiduciary, whose "dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the . . . stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.").

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

7

While she may not be a "controlling" shareholder, it is important to note that the DIP Lender is the 8th largest active stockholder of the Debtors, which has approximately 400 shareholders by Fourth Third's count, as of July 23, 2010 as well as a pre-petition secured creditor. See DIP Motion at 1:4 and 11:23-28. It is unclear what the DIP Lender's relationships are with the other parties involved with the Debtors. Even more concerning is the fact that paragraph 6 of the DIP Credit Agreement calls for the Debtors to provide office space to the DIP Lender so that she can "provide such assistance to the [Debtors] as [DIP] Lender deems advisable and for related activities." See DIP Motion at Exhibit A at ¶6. Apparently, the DIP Lender will be a post-petition consultant to the Debtors, which is highly irregular. This raises serious red-flags for Fourth Third and the Debtors should be required to provide further detail of the nature and scope of Ms. Davidson's relationship with the Debtors, including any planned post-petition involvement.

Based on the thin record before the Court, it is possible that further investigation through discovery may reveal that the DIP Lender does in fact fit within the definition of an "insider." At this point, however, it is clear that she is not disinterested. Heightened scrutiny, as denial of the DIP Motion at this stage, is warranted.

**B.    The Debtors Appear To Need Significantly Less Funds Than Are Requested**

The terms of the DIP Credit Agreement limits the DIP Lender's funding at no more than $400,000 in any one month. See DIP Motion at Exhibit A at ¶2. But a close review of the Debtors' budget attached to the DIP Credit Agreement as Exhibit A shows that the Debtors only need $300,000 to make it through to January 2011. Moreover, the DIP Lender's funding is limited to $1.5 million. The additional $3.5 million is wholly illusory as it may be funded only in the DIP Lender's sole discretion. Id. Further, the $5 million amount is three times what the Debtors need based on the Debtors' own budget and projections. Given the serious concerns over the identity of the DIP Lender and given her relationship with the Debtors, Fourth Third believes that it would be appropriate that the Court limit the total amount of the DIP Financing (if approved) to $1.5 million, and authorize only $300,000 on an interim basis pending a final hearing to allow either further disclosures by Debtors or discovery to be taken with respect to the DIP Lender's relationship with the Debtors. This would also allow time for the Debtors to discuss use of cash collateral with Wells

8

Fargo Bank thereby further reducing the need of the DIP Financing.

### C.    Roll-up Of Portions Of The Existing Debt Should Be Stricken

Fourth Third objects to the DIP Financing as it includes an impermissible roll-up provision. As described in the DIP Motion, the DIP Lender is a party to two separate pre-petition loan agreements: (a) a 12% secured note dated August 1, 2010 in the amount of $400,000, and (b) a 12% secured noted dated October and November 2009 in the amount of $500,000 (the DIP Lender's portion of that loan is $50,000) (these loans are collectively defined in the DIP Motion as the "Existing Loan").  The Existing Loan is secured by the Debtors' inventory and equipment and the DIP Lender asserts that she is entitled to $4,500 in monthly payments for interest.  See DIP Motion at 11:23-28.

Paragraph 11 of the DIP Credit Agreement provides that Debtors will file a motion seeking authority to make adequate protection payments to the DIP Lender on account of the Existing Loan or the payments that would have been adequate protection payments will be used to fund the DIP Loan and the DIP Lender shall be entitled to convert that portion of the Existing Loan into the DIP Loan subject to superpriority status.  See DIP Motion at Exhibit A at ¶11.  The amount of those adequate protection payments, to the extent they are used to fund the DIP Loan, is unclear.  The DIP Motion and the DIP Credit Agreement do not cap the amount of adequate protection payments that the DIP Lender can roll into the DIP Financing.

The DIP Motion fails to provide sufficient grounds to allow for any portion of the Existing Loan to be rolled-up into the DIP Financing.  This appears to be yet another benefit for the DIP Lender due to her pre-petition relationship with the Debtors.  The DIP Lender, as a pre-petition secured creditor, is at most entitled to adequate protection for diminution in the value of the collateral securing the Existing Loan.  As the collateral is not cash, a motion seeking such payments is the appropriate mechanism here, not a default roll-up of the payments into the DIP Loan. Fourth Third objects to the roll-up provision of paragraph 11 and asserts that it should be stricken from the DIP Credit Agreement.

### D.    The Description Of The Collateral Is Inconsistent

The description of the collateral securing the DIP Financing is muddy at best.  Debtors

9

appear to carve-out avoidance actions from the DIP lien (See DIP Motion at Exhibit B at ¶6), but the Debtors do not carve-it out of the superpriority claim (See DIP Motion at Exhibit B at ¶5). It is premature to include avoidance actions as part of the DIP Lender's superpriority claim as prosecution of such actions may prove to be crucial in this case. Also the DIP Motion and proposed Order (Exhibit B to the DIP Motion) contemplate DIP liens but the actual DIP Financing only references a superpriority claim under Bankruptcy Code § 364(c). See DIP Motion at 2:19-24 and DIP Motion at Exhibit A at ¶9. The Debtors must clarify the proposed property being used to collateralize the DIP Financing.[4]

### E.    Indemnification Provision In DIP Credit Agreement Is Unclear

Paragraph 21 of the DIP Credit Agreement provides an indemnity to the DIP Lender. See DIP Motion at Exhibit A at ¶21. It appears that the indemnity is limited to claims related to the DIP Financing which, as indicated above, may include the DIP Lender's consultant work for the Debtors post-petition in the Debtors' office space. See DIP Motion at Exhibit A at ¶6 (entitled "Use of Borrowers' Office Space and Facilities by Lender). Put simply, the indemnity provision can be read to be overly broad. For the avoidance of any doubt, Fourth Third requests that this paragraph be clarified that the indemnity is limited to the DIP Lender in her capacity solely as the DIP Lender and not in any other capacity, including but not limited to as a secured creditor, shareholder or post-petition consultant.

### F.    Lack Of Evidence In Support Of The DIP Motion

The Debtors have proffered little to no evidence in support of the DIP Motion that demonstrates (a) the immediate need for the entire $1.5 million let alone the need for the entire DIP Financing amount of $5 million; (b) the proposed DIP Lender can actually fund the DIP Financing or has indicated the source of such funds; and (c) that it is unable to obtain postpetition financing on an unsecured basis.

The burden of proof is upon the Debtors to establish a present need for the DIP Financing. See In re Adamson Co., Inc., 29 B.R. 937 (Bankr. E.D. Va. 1983) (Debtor seeking interim financing through granting priority over other administrative expenses should carry at least the same if not

---

[4] Fourth Third reserves all rights to assert additional objections based on the Debtors' clarification.

10

heavier burden than petition asking for temporary restraining order). The declaration and the supplemental declaration of Michael Pompey who is the President of MMFX Technologies and one of the Debtors "Authorized Officers" falls woefully short of providing competent admissible evidence of the Debtors' need for up to $5 million, or even the entire $1.5 million on an immediate, and interim basis. The amount needed, as mentioned above, is far less and even from the Debtors' own budget, it appears that they only need $300,000 on an interim basis to make it through to January 2011.

In addition, there is absolutely no evidence that establishes that the proposed DIP Lender can actually fund the DIP Financing or the source of such funds. Fourth Third requests that a showing be made by the Debtors in this regard.

Lastly, the supplemental declaration of Michael Pompey contains the following conclusory statements: "The Debtors were unable to obtain credit from other sources, despite extensive negotiations with third parties over an extended period of time. As a result, efforts were focused on obtaining the DIP Financing currently sought. The DIP Financing offered by the DIP Lender is the Debtors' only realistic alternative to obtain post-petition credit." See Supplemental Declaration of Michael Pompey at 4:10-14. The declaration fails to provide any foundation for this conclusory allegation. For example, there is absolutely no description of the Debtors' efforts to seek financing on an unsecured basis let alone other alternatives to the current DIP Financing. Fourth Third requests that this Court require the Debtors to make a requisite showing.

### G. Automatic Relief from Stay Is Objectionable And Denies Parties Due Process

Paragraph 13 of the DIP Credit Agreement provides for automatic relief from stay upon default. See DIP Motion at 2:27 and DIP Motion at Exhibit A at ¶13. Fourth Third objects to this and requests that, at a minimum, the Court require a motion, which may be brought on shorten time, that evidences the default is filed and served by the DIP Lender. Requiring the DIP Lender to file a motion protects parties' due process rights and makes all interested parties aware of the situation.

## IV. FOURTH THIRD'S ALTERNATIVE DIP LOAN

As mentioned above, Fourth Third stands prepared to serve as a DIP lender. Attached hereto as Exhibits A and B is a clean and red-line version of the DIP Credit Agreement that was attached to

11

the DIP Motion as Exhibit A showing what terms Fourth Third is offering the Debtors. Indeed, Fourth Third's proposal is superior to the current DIP Financing in a number of respects, including the following:

    1.    Fourth Third's proposed DIP loan will guarantee financing of $1.6 million, $100,000 more than what is guaranteed under the current proposal.

    2.    Fourth Third's proposed DIP loan accrues interest at 10% and thus, has a 2% lower interest rate.

    3.    Fourth Third's proposed DIP loan does not require any payments be made during the proposed term.

    4.    Fourth Third will not require the Debtors to provide office space.

    5.    Fourth Third will not require immediate relief from the automatic stay upon a termination event.

    6.    Fourth Third does not propose to roll up any prepetition debt.

## V.    RESERVATION OF RIGHTS

Fourth Third reserves the right to raise other substantive and technical matters prior to or at the hearing on the DIP Motion.

## VI.    CONCLUSION

Based upon the foregoing, Fourth Third requests that (a) Fourth Third's objections are sustained, (b) the DIP Motion is denied or the alternative DIP loan proposal submitted by Fourth Third is approved, and (c) the Court grant such other and further relief as it deems proper under the circumstances of these cases.

Should the Court be inclined to grant the DIP Motion, Fourth Third respectfully requests that the Court limit the DIP Financing to $1.5 million, and authorize only $300,000 on an interim basis with a final hearing on the DIP Financing scheduled for early to mid-January 2011.

Dated: December 15, 2010    WINSTON & STRAWN LLP

By:  /s/ Justin E. Rawlins
    John D. Fredericks
    Justin E. Rawlins
    Marcus O. Colabianchi
    Attorneys for Creditor
    FOURTH THIRD LLC